UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-193-KSF

EP ACQUISITION CORP., et al.                                      PLAINTIFFS

vs.                          **OPINION AND ORDER**

MAXXTRADE, INC., et al.                                             DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant Jeffrey M. Garstka ("Garstka") to vacate an arbitration award [DE 34]; Plaintiffs' motion to strike Garstka's reply and attachments [DE 45]; and a motion to intervene [DE 48] by Amnon Kawa and AMVA Holdings, Inc. For the reasons discussed below, all motions will be denied.

I.     **BACKGROUND**

Garstka seeks to set aside an arbitration award in favor of Plaintiffs, primarily on the ground that his lack of notice of a Final Hearing before the arbitrators was misconduct that violated his right to due process. The underlying facts in this case are not disputed. Myron David Schneidt ("Schneidt") and Garstka were equal owners of MaxxTrade, Inc. ("MaxxTrade"), a small broker-dealer with an address of 880 Corporate Drive, Suite 410, Lexington, Kentucky 40503. Schneidt was MaxxTrade's Chief Operating Officer ("COO") and President. [DE 34-16, p. 2]. Garstka was the Chief Financial Officer and had an accounting practice adjacent to MaxxTrade at 880 Corporate Drive, Suite 420. *Id.* at 4.

In September 2006, Plaintiffs Shlomi S. Eplboim ("Eplboim") and Michael Alcide Poutre II ("Poutre"), principals of EP Acquisition Corp., began working for MaxxTrade in anticipation of purchasing the company. [DE 34-18, Ex. 2, p. 17; Ex. 3, p. 17]. On March 6, 2007, Schneidt and Garstka entered into a Stock Purchase Agreement by which they agreed to transfer the common stock of MaxxTrade to EP Acquisition Corp. in a two-phase transaction. [DE 34-1, pp. 3-4].

In April 2007, Plaintiffs paid $10,000 for 20 percent of MaxxTrade's stock and deposited $50,000 with MaxxTrade's clearing firm, Penson Financial Services, Inc. The balance of 80 percent of MaxxTrade's stock was to be transferred for an additional payment of $20,000 on or before October 31, 2007, provided several conditions precedent were satisfied. *Id.* The second closing did not occur for reasons that are not relevant here. Plaintiffs were terminated from their employment with MaxxTrade on March 16, 2009, and on May 27, 2009, they filed the present action alleging breach of the Stock Purchase Agreement. [DE 1].

Defendants Schneidt, Garstka and MaxxTrade were represented in this Court by John C. Roach [DE 17] and Salvador M. Hernandez of Nashville, Tennessee, appearing *pro hoc vice*. [DE 20]. Following a June 4, 2009 hearing on Plaintiff's motion for a temporary restraining order and preliminary injunction, this action was stayed, and the parties were ordered to "immediately take such actions and submit such documents including, but not limited to, this Order and such forms as are required to submit this dispute to an expedited arbitration before FINRA," the Financial Industry Regulatory Authority. [DE 23].

Plaintiffs initiated an "expedited" FINRA arbitration on June 23, 2009, and Defendants entered their appearance through Hernandez by letter dated June 24, 2009. [DE 34-4, pp. 1-4]. FINRA assigned the matter to its Los Angeles, California, office *Id.* Defendants requested the venue be changed to Louisville, Kentucky, or Chicago, but the request was denied after opposition from Plaintiffs. [DE 34-4, pp. 3-8]. Defendants filed a joint answer and counterclaim on July 15, 2009. *Id.* at 9. In November 2009, MaxxTrade moved its offices to the home of Schneidt. [DE 34-16, p. 2]. There is no record of a change of address notification being sent to FINRA. By correspondence to FINRA dated December 16, 2009, Mr. Hernandez withdrew as counsel and provided FINRA contact information of David Schneidt, MaxxTrade, Inc. 880 Corporate Drive, Suite 410, Lexington, KY 40503. [DE 34-5, p. 8]. On January 8, 2010, Mr. Hernandez clarified that he was withdrawing as counsel for all parties, MaxxTrade, Schneidt and Garstka, and again provided

the Suite 410 address as "[c]ontact information for all of the Respondents." *Id.* at 9. No other counsel entered an appearance for the Respondents, despite FINRA granting additional time to seek counsel. [DE 34-14, pp. 12-13].

On June 1, 2010, Garstka relocated his accounting practice to an unstated address. [DE 34-16, p. 2]. On June 29, 2010, FINRA faxed a letter to Plaintiffs' counsel, Paul Lieberman, confirming a telephonic prehearing conference on the following day. [DE 34-13, pp. 2-3]. Copies are shown as being sent to Schneidt for Schneidt, Garstka and MaxxTrade. *Id.* at 3. On July 7, 2010, a Pre-Hearing Conference Scheduling Order was faxed to Lieberman with copies to Schneidt. *Id.* at 4-7. The Scheduling Order indicated no one appeared for Respondents at the prehearing conference call. *Id.* at 6. The Hearing was scheduled for July 15, 2010, with an additional date reserved for July 16, 2010. None of the Respondents, nor their counsel, were present at the Hearing. [DE 34-2, p. 4]. Chairman Milder concluded that Schneidt and MaxxTrade received due notice and that the Hearing would proceed without them. *Id.* at 5. Chairman Milder said they did not have documentation of service on Mr. Garstka. *Id.* at 5-6.

On July 28, 2010, Garstka learned from documents he received from the Kentucky Department of Financial Institutions[1] that the Final Hearing had been conducted in his absence. *Id.* at 7. On August 30, Garstka's attorney, who is not identified in the record, recommended that Garstka retain securities counsel to represent him in matters resulting from his association with MaxxTrade and Schneidt. *Id.*

Present counsel, Charles C. Mihalek, was retained September 9, 2010. *Id.* Mihalek entered an appearance in the arbitration on behalf of Garstka and filed a September 15, 2010 motion to reopen the record and schedule additional hearing dates. *Id.* Plaintiffs opposed the motion to reopen, noting that it was Garstka's responsibility to remain aware of the status of the arbitration, that it was his obligation to ensure that FINRA had written notice of any change of his

---

[1] Garstka does not identify the address at which he received these documents.

address, and that Schneidt regularly received notice and appeared *pro se* at several prehearing conference calls. [DE 34-17, pp. 3-5]. Plaintiffs further argued that Garstka did not file a separate answer in the arbitration, but instead choose to be represented by counsel for MaxxTrade, and that it was too late now for him to seek separate consideration from the arbitrators. *Id.* at 6. Finally, Plaintiffs noted that FINRA Code § 13603 authorizes the Panel to go forward with a hearing and render an award when a party fails to appear after having been notified of the time, date and place.

Garstka reiterated that he had no prior notice of the hearing. Accordingly, he claimed a violation of his due process rights. [DE 34-18, p. 2]. He did not deny awareness that the arbitration existed, but only denied receiving notice of the date, time and place of the final evidentiary hearing. *Id.* at 3. In support of his claim that he had "material and pertinent evidence to present related to Claimants and to this matter," Garstka provided BrokerCheck Reports on Michael Poutre II and Shlomi Eplboim. [DE 34-18, Exs. 2, 3]. The report on Mr. Poutre showed a FINRA action against him initiated in July 2010 for excessive charges for the sale of corporate bonds while employed by MaxxTrade. For this violation, Poutre was suspended for thirty days. *Id.*, Ex. 2, pp. 8, 11. Another FINRA action initiated in May 2010 reflected that Poutre failed to provide information and documents concerning outside business activities, for which he received a two-year suspension and a fine of $5,000. *Id.* at 12, 14.[2] The Report for Mr. Eplboim showed a history of customer complaints, including a pending dispute reported by several firms regarding allegations of unsuitable recommendations and unauthorized trades. [DE 34-18, Ex. 3].

In November 2010, Garstka filed a motion to sever and change venue, in which he said he had severed all ties with Plaintiffs and with Schneidt and MaxxTrade. [DE 34-20, p. 2]. Garstka claimed that he relied in the past on "Schneidt who repeatedly assured him that this matter was

---

[2] A "status report" to this Court in February 2011 stated that "Michael Poutre has withdrawn from the securities industry and did not participate in the FINRA proceeding during 2010 through the present." [DE 30].

4

being handled by competent legal counsel." Garstka then claimed that Schneidt defrauded him and asked that Garstka's claims be severed from the other respondents. *Id.* at 3.

On November 23, 2010, the Panel denied Garstka's motions to reopen and sever. [DE 34-22]. On February 15, 2011, the Panel entered its Award against MaxxTrade, Schneidt and Garstka, jointly and severally, to pay $290,674.00 in compensatory damages, with interest thereon at a rate of 10 percent per annum from June 23, 2009 until paid in full, to pay Plaintiffs' attorneys' fees of $90,000, and costs in the amount of $4,500. Garstka was held solely liable to pay additional attorneys' fees in the amount of $5,000 relating to his motion to reopen. [DE 34-23, pp. 4-5]. The Award notes that FINRA Dispute Resolution received a notice of Chapter 7 Bankruptcy Case for MaxxTrade on August 20, 2010, but the Panel received an Order of Dismissal of MaxxTrade's Bankruptcy Case on September 21, 2010. *Id.* at 4. The Arbitrators' fees were allocated among the parties. *Id.* at 6-8. The Panel also agreed that MaxxTrade's termination comments to FINRA about Mr. Eplboim should be expunged. *Id.* at 5.

On March 16, 2011, Garstka moved in this Court to vacate the Award and to remand the matter to FINRA for a rehearing before a new arbitration panel. [DE 34]. He argued that fundamental fairness and due process require that the award be vacated because he did not receive notice of the time, place and location of the Final Hearing. [DE 34-1, pp. 8-11]. Next, he argued that the Award must be vacated because of the Arbitrators' evident partiality and bias against him. *Id.* at 11-13. Finally, he claimed that, even if notice of the Final Hearing was sent to him, it was insufficient notice under FINRA Code § 13600. *Id.* at 13-14.

Plaintiffs responded that the notices sent by their counsel and FINRA were adequate, and any lack of notice was caused by Garstka's failure to remain apprised of the proceedings or to give anyone notice of any change of address. [DE 39, pp. 12-18]. They claimed that Garstka failed to demonstrate bias or corruption of the arbitrators. *Id.* at 19-22. They further argued that Garstka

5

is not entitled to vacate any award against MaxxTrade or Schneidt or to vacate the expungement regarding Mr. Eplboim. *Id.* at 22-23.

In reply, Garstka insisted that he did not receive reasonable notice and that FINRA should have used his residential address, which was provided years ago when he registered with FINRA. [DE 42, p. 3]. He noted that FINRA sent a document to his home address by Federal Express on July 26, 2010 [DE 42-2, p. 1] and argued that his failure to keep FINRA advised of his current address is a red herring and untrue. [DE 42, p. 3]. He noted that when faxes to MaxxTrade failed, FINRA emailed notice of a prehearing conference and notice of the final hearing to Schneidt, but did not send any separate notice to Garstka. He argued that, even after he apprised the Arbitrators in his motion to reopen that he had not received notice, they still would not allow him to present evidence. *Id.* 5-6.

Garstka also argued that FINRA Code of Arbitration § 13600(c) requires 20 days notice before a hearing begins and that he did not agree to waive the notice requirement. *Id.* at 7-8. Finally, he claimed he should be able to set aside the Panel's order of expungement because they did not hear the evidence he would have presented regarding wrongdoing by Eplboim and Poutre and evidence to contradict the documents provided to the Panel by Eplboim. *Id.* at 8-10.

Garstka's reply precipitated a motion to strike the reply and all attachments on the ground that the new documents, evidence and arguments are inappropriate in a reply brief to which there is no opportunity to respond. [DE 45, pp. 1-2]. Plaintiffs further claimed that many of the documents post-date the Hearing, are irrelevant, or reflect an improper attempt to impugn the Plaintiffs' reputations so as to influence the outcome of the motion to vacate. Plaintiffs also list new arguments raised for the first time in the reply and note there is no explanation for failing to present them in the original motion to vacate. [DE 45].

Garstka responded that arbitrations and actions to vacate arbitration awards are not subject to the Federal Rules of Civil Procedure on which Plaintiffs rely. [DE 46, p. 2]. He also argued that

a motion to strike under Fed. R. Civ. P. 12(f) applies only to pleadings and not to motions. *Id.* at 3-5. Plaintiffs replied that the motion to strike is supported by Sixth Circuit authority and reiterated that the inclusion of new documents and arguments in a reply brief is improper. Plaintiffs also noted that the Court could simply ignore the new material.

II. **ANALYSIS**

   A. **Motion to Strike**

Defendants argue that a motion to strike is not the proper procedure in the context of a motion to vacate an arbitration award. In a similar action to enforce an arbitration award, the Sixth Circuit said that the district court "should have acted on the motion to strike and should have ordered the exhibit stricken as improperly filed." *United Steelworkers of America, A.F.L.-C.I.O v. Caster Mold and Machine Co.*, 345 F.2d 429, 430 (1965). Thus, a motion to strike is proper.

In the present case, the documents Plaintiffs want stricken are:

- Form U4 Amendment dated December 3, 2010, with Mr. Garstka's employment address on Harrodsburg Road and his residential address.

- FedEx Airbill from FINRA to Garstka's home address dated July 26, 2010

- Two emails from FINRA to counsel and Mr. Schneidt dated May 11, 2011

- A letter from Julie Evidon dated October 9, 2009

- A Statement of Claim filed on March 16, 2011 before FINRA naming MaxxTrade, Schneidt, Garstka, Poutre and Eplboim as defendants

- A letter from Schneidt to Eplboim and Poutre dated September 15, 2006

- Two Pre-Hiring Questionnaires from Poutre and Eplboim to MaxxTrade dated August 16, 2006

- A letter from FINRA to Schneidt dated April 7, 2009 regarding Eplboim and Poutre

In summary, Plaintiffs argue that these documents either post-date the hearing and are irrelevant, or they were available to Garstka at the time he filed his motion in this Court and should not have been held until the reply brief. The new arguments Plaintiffs seek to exclude are that:

- FINRA had Garstka's home address and should have served him at that address.

7

- If he had received notice of the July 15, 2010 hearing or if he could have presented evidence in November 2010, he would have introduced evidence of a FINRA arbitration that was not filed until March 16, 2011.

- Had he been able to present to the arbitrators the evidence he provides to this Court, the outcome would have been different.

The Sixth Circuit has consistently condemned arguments raised for the first time in reply briefs. *See Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003) (new arguments in a reply brief vitiate a nonmovant's ability to respond); *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("Since defendant was deprived of an opportunity to address the issue by plaintiff's failure to raise this issue in his original brief, we will consider the issue waived."); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We generally will not hear issues raised for the first time in a reply brief."). To ensure a complete record in the event of appellate review, the Court will not strike portions of the reply brief and the new documents, but it will not consider them in deciding whether to vacate the Award.

**B.     Motion to Vacate**

An arbitration award may only be vacated under the grounds provided in 9 U.S.C. § 10:

(a)     In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration –

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made

These grounds are the exclusive grounds for vacatur. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Mr. Garstka seeks vacation of the FINRA arbitration Award for two reasons, a lack of notice of the final hearing, which he characterizes as arbitrator misconduct causing him prejudice, and a claim of impermissible, evident bias that prejudiced him.

In order to vacate the decision of an arbitration panel, a party "must clear a high hurdle. It is not enough for petitioners to show that the panel committed an error – or even a serious error." *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, ___ U.S. ___, 130 S.Ct. 1758, 1767 (2010). "The Federal Arbitration Act expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). "The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award. The party alleging evident partiality must establish specific facts which indicate improper motives on the part of the Board." *Sheet Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 745-46 (9th Cir. 1985).

Garstka's first claim is that he was denied due process because he did not receive personal notice of the date, time and place of the Final Hearing. "In the arbitration context, due process is satisfied so long as the arbitrator provided a fundamentally fair hearing, one that meets the minimal requirements of fairness – adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific Railroad Company*, 522 F.3d 746, 751 (7th Cir. 2008). Fundamental fairness requires only "adequate notice." *Sunshine Mining Co. v. United Steelworkers Local 1038,* 823 F.2d 1289, 1295 (9th Cir. 1987).

In *Carpenters 46 Northern California Counties Conference Board v. Zcon Builders*, 96 F.3d 410 (9th Cir. 1996), Sharon Hill argued she did not receive adequate notice of an arbitration. The appellate court disagreed, noting that the notice was sent to the registered agent for service of process for Zcon Builders and Sharon Hill's business and was sent to the address where the

9

corporations maintained their offices. It concluded that "the notice given Sharon Hill was more than sufficient to satisfy any requirement of fairness or due process." *Id.* at 414. Similarly, the Seventh Circuit held that notice of an arbitration demand was adequate when notices were sent by regular mail to the last known address of the defendants in conformity with AAA rules, and the mail was never returned. *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332-33 (7th Cir. 1995). *See also Marsillo v. Geniton*, 2004 WL 1207925 (S.D.N.Y. June 1, 2004) (regular mail to address listed in U4 was adequate). Garstka's authority, *Amalgamated Cotton Garment & Allied Indus. Fund v. JBC Co.*, 608 F. Supp. 158 (W.D. Pa. 1984), is readily distinguishable in that the defendants there had no notice whatsoever that there was an arbitration proceeding and all mail was returned unclaimed.

The facts of the present case strongly support rejection of the motion to vacate. Garstka was aware of the arbitration[3] and did not hire separate counsel to represent him. Instead, he chose to be represented by Mr. Hernandez, counsel for MaxxTrade and its COO Schneidt. Hernandez entered an appearance, sought a change of venue from Los Angeles, and filed a joint Answer and Counterclaim in the arbitration for all defendants. [DE 34-4, pp. 3-4, 9-28]. Six months after the expedited arbitration proceedings began, Hernandez withdrew, but Garstka did not hire anyone to represent him individually in the arbitration.

When Hernandez withdrew, he advised the arbitrators that contact information "for all of the respondents" was the MaxxTrade office at 880 Corporate Drive, Suite 410. [DE 34-4, pp. 8-9]. Counsel for Plaintiffs served the respondents by first-class mail at that address and did not receive any notice regarding a change of address or facsimile number. [DE 39, p. 3; Lieberman Affidavit ¶ 3]. FINRA sent a notice on June 29 to Plaintiffs' counsel and attempted to send it by facsimile two different times to MaxxTrade at the number provided by Hernandez. [DE 39, p. 4]. When the facsimile did not work, FINRA send the notice to Mr. Schneidt by email. None of the respondents participated in the pre-hearing conference on June 30. A hearing date of July 15, 2010, was

---

[3] Garstka only denies receiving notice of the Final Hearing. [DE 34-18, p. 3]

agreed upon during the pre-hearing conference, and FINRA attempted to send a letter and scheduling order by facsimile to respondents at the number provided by Hernandez. When the fax did not go through, FINRA sent the information by email to Mr. Schneidt. *Id.* at 4-5. None of the respondents attended the Final Hearing.

According to MaxxTrade's Annual Report filed by Mr. Garstka as Secretary on January 16, 2009, the principal office of MaxxTrade was 880 Corporate Drive, Suite 410, and its registered agent was Schneidt at that address. [DE 39-4, p. 7]. The information on FINRA's BrokerCheck website as of May 11, 2011, shows Garstka was employed by MaxxTrade through July 2010, and the firm's address is 880 Corporate Drive, Suite 410. [DE 39, p. 9]. FINRA rules required the Defendants to inform FINRA and all other parties of any changes of address during an arbitration. Code § 13300(f). FINRA rules also permit documents to be served by first class mail, facsimile, or another method, including electronic mail, that is approved by the panel. Code § 13300(d).

Garstka must accept responsibility for any lack of actual notice regarding the final arbitration hearing. He knew an expedited arbitration was initiated in June 2009. He had no reason to believe the claim against him would disappear of its own accord. There is no evidence he made any effort whatsoever to keep himself apprised of the status of the arbitration. He provided no contact information other than through MaxxTrade. He was employed by MaxxTrade and was a 50 percent owner of the firm until July 2010. He does not deny knowing that MaxxTrade moved its offices to Schneidt's home in November 2009, but he made no effort to apprise FINRA or the arbitration panel of this change in contact information.

Garstka tries to blame Schneidt for the lack of notice. He told the arbitrators that Schneidt and MaxxTrade "knowingly failed to participate in this Arbitration for nearly a year. Respondent Garstka's problems in this Arbitration stem from his past reliance on Respondent Schneidt who repeatedly assured him that this matter was being handled by competent legal counsel." [DE 34-20,

p. 2]. Garstka might have some claim against Schneidt, but that does not make the arbitration fundamentally unfair.

The notices sent by the arbitrators and opposing counsel were in conformity with FINRA rules and were sent to the registered service of process agent at the last known address for respondents. *See Gingiss*, 58 F.3d at 332-33. It is the conclusion of this Court that the notices sent by the parties and FINRA were adequate and that the proceedings were fundamentally fair. There is no evidence of misconduct by the arbitrators that prejudiced the rights of any party.

Garstka's second argument to vacate the award was that there was "evident partiality and bias against Garstka." [DE 34-1, p. 12]. In support, he cites to the transcript of the hearing where the arbitrators acknowledge there was no evidence that Garstka was personally served with notice of the final hearing, yet they issued an Award jointly and severally against him and dismissed his counterclaim. *Id.* Garstka also references one arbitrator's comment that his CPA license should be lifted, and another arbitrator saying they are looking at the Kentucky Board of Accountancy to deal with him. *Id.* Finally, Garstka argues bias because he was denied an opportunity to present his proof, but the Plaintiffs were permitted to submit additional evidence on two occasions. *Id.*

First, FINRA rules permit rendition of an award despite a party's failure to appear. Code § 13603 provides: "If a party fails to appear at a hearing after having been notified of the time, date and place of the hearing, the panel may determine that the hearing may go forward, and may render an award as though all parties had been present." While Garstka denies actual notice of the final hearing, notice was sent in compliance with FINRA rules and he was aware of the arbitration proceedings. He cannot avoid entry of an award against him by simply ignoring the arbitration proceedings or by relying on his business partner to take care of him.

Second, the comment about Garstka's CPA license was made near the very end of a hearing in which the arbitrators heard extensive evidence of wrongdoing by MaxxTrade, Schneidt and Garstka. [DE 34-14, p. 149]. In its Award, the arbitrators found that statements made by

Schneidt and Garstka upon termination of the Plaintiffs were "factually impossible, clearly erroneous, and false when made" and were "false and defamatory." [DE 34-7, pp. 65-66]. There is no evidence that any of the arbitrators had a preconceived bias against Garstka based on improper motives. "Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation." *Sheet Metal Workers*, 756 F.2d at 746. "The appearance of impropriety, standing alone, is insufficient." *Id.* Garstka has failed to meet his burden of showing evident partiality.

With respect to allowing Plaintiffs to present evidence after the hearing, while denying Garstka's request to reopen the hearing, there was no misconduct by the arbitrators. Garstka knew about the arbitration, but completely ignored it until there was a ruling against him. After the fact, he decided he wanted to start over with another hearing. He is not entitled to have his cake and eat it, too. Moreover, the supplemental evidence from Plaintiffs consisted of a one-page summary of damages calculations that was discussed during the hearing and evidence of attorneys' fees incurred as a result of Mr. Garstka's post-arbitration motions. This conduct does not support a claim that the arbitrators acted with improper motive.

### C. Motion to Intervene

Amnon Kawa and AMVA Holdings, Inc. moved for leave to intervene in this action on August 29, 2011. [DE 48]. There are judgment creditors of Shlomo Eplboim who have registered their July 11, 2011 California Judgment for collection in this district and claim a right to intervene under Fed. R. Civ. P. 24(a)(2) or 24(b)(2). They claim entitlement to recover their judgment amount from funds payable to Eplboim in this action. [DE 48-2, ¶¶ 10, 14]. Alternatively, they seek "sale of the chose in action upon which this action is based, with a portion of the proceeds sufficient to satisfy the California Judgment paid over to intervening plaintiffs." ¶ 15.

It appears that movants perceive the present action is one to enforce the arbitration award. However, Plaintiffs filed on March 8, 2011, an action styled *EP Acquisition Corporation, et al. v.*

13

*Maxxtrade, Inc. et al.*, Civil Action No. LC 092942, in the Superior Court, Los Angeles County, California to enforce the Award. [DE 39, p. 7]. That action was stayed, pending the outcome of the motion to vacate the Award in this Court. After this Opinion denying the motion to vacate, there should be no further proceedings in this Court. Accordingly, the motion to intervene will be denied without prejudice to refile in the event it should become appropriate.

III.  CONCLUSION

    **IT IS ORDERED** that:

1. The stay of this matter pending arbitration is **LIFTED**, and the case is returned to the active docket;

2. Plaintiffs' motion to strike Garstka's reply and attachments [DE 45] is **DENIED**, but the new documents and arguments were not considered by the Court;

3. Defendant Garstka's motion to vacate [DE 34] is **DENIED**;

4. The motion of Amnon Kawa and AMVA Holdings, Inc. to intervene in this action as judgment creditors of Shlomo Eplboim [DE 48] is **DENIED WITHOUT PREJUDICE**; and

5. The parties are **ORDERED TO SHOW CAUSE** on or before **September 28, 2011** why this matter should not be dismissed with prejudice and stricken from the active docket

This September 14, 2011.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge

14